IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REX A. COUGHENOUR, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 16-1415 |
| | ) |
| v. | ) Judge Cathy Bissoon |
| | ) |
| CITY OF PITTSBURGH, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

Pending before this Court is a Motion to Dismiss (**Doc. 38**) filed by Defendant City of Pittsburgh. For the reasons stated below, Defendant City of Pittsburgh's Motion to Dismiss will be GRANTED, and Plaintiff's claims against the City will be DISMISSED without prejudice.

**A. Relevant Factual History and Legal Claims**

On or about September 15, 2015, Plaintiff Rex Coughenour ("Plaintiff") was on Duquesne University's campus where he had been studying for his Masters in Business Administration (MBA) courses in Gumberg Library. (Amend. Comp. (Doc. 35), ¶¶ 9-10). At the same time Plaintiff was studying, a pregnant woman ("the victim") was reportedly assaulted, beaten and robbed near the intersection of P.J. McCardle Roadway and the Liberty Bridge. Id. at ¶ 12.

Plaintiff made a purchase at the university convenience store before he began to walk home across the Monongahela River to the South Side neighborhood. Id. at ¶¶ 12-13. Approximately 1:00–1:30 a.m. on September 15, 2015, Defendant Officer Brett Butkewich

1

("Defendant Butkewich") came upon Plaintiff while searching the South 10th Street area. Defendant Butkewich stopped and detained Plaintiff in the middle of the street, two blocks from Plaintiff's residence. Id. at ¶¶ 14 and 22. Unnamed police officers then "caused the ambulance to transport the victim from the scene of the reported assault to where Defendant Butkewich held Plaintiff." Id. at ¶ 17. While the victim was in the back of the ambulance and Plaintiff was handcuffed and standing next to a uniformed police officer, the police asked the victim if Plaintiff was her assailant. Id. at ¶ 18. The victim identified Plaintiff as her assailant and he was immediately placed under arrest. Id. at ¶ 19.

Plaintiff made repeated attempts to inform Defendant Butkewich that he had just been on Duquesne University's campus and that witnesses at Duquesne University could verify his whereabouts at the time of the alleged assault but Defendant Butkewich ignored and disregarded his proffered alibi. Id. at ¶ 23. Defendants Butkewich and Officer Robert Pedley ("Defendant Pedley") (together "the Defendant Officers") then charged Plaintiff with aggravated assault, robbery, indecent assault and aggravated assault of an unborn child. Id. at ¶ 25. Defendant Officers did not make an attempt to verify Plaintiff's alibi. Id. at ¶ 23. According to Plaintiff, Defendant Officers did not tell Plaintiff why he was stopped, detained or arrested until after he arrived at the Allegheny County Jail (ACJ). Id. at ¶ 24. Plaintiff was held at the ACJ for two weeks before he met with an attorney and almost a month before he met with the public defender who represented him. Id. at ¶ 26.

During Plaintiff's imprisonment, he was identified on television, internet, radio and print reports as an assailant who had sexually assaulted and beaten a pregnant woman. Id. at ¶ 34. Approximately one month after his arrest and imprisonment, Plaintiff's public defender submitted video surveillance footage from Duquesne University showing that Plaintiff was not at

2

the scene of the assault on September 15, 2015.  Id. at ¶ 29.  Thereafter, all charges against Plaintiff were dropped and he was released.  Id.

Plaintiff subsequently filed this lawsuit against Defendants The City of Pittsburgh, Pedley, and Butkewich (collectively, "Defendants"), pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging false arrest, false imprisonment and malicious prosecution in violation of his rights under the Fourth Amendment to the Constitution of the United States.  (Doc. 1).  Defendant City of Pittsburgh filed a partial motion to dismiss on January 23, 2017, and Plaintiff filed an Amended Complaint on March 01, 2017.  (Docs. 35 and 21).  Moving Defendant then filed a partial motion to dismiss Counts I-III of the Amended Complaint (Doc. 38).  This motion is ripe for disposition.

### B. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

### C. Analysis

A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978).  Instead, in order to state a claim of municipal liability under section 1983, a plaintiff must allege that he or she was subject to a constitutional violation as the result of some identifiable official custom or policy of a municipality.  Faylor v. Szupper, 411 F. App'x 525, 530-31 (3d Cir. 2011) (citing

Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998)). Additionally, a plaintiff must establish that the municipality was the moving force behind his alleged injury. Bd of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S 397, 405 (1997). This means that the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. (citations omitted).

In his Amended Complaint, Plaintiff makes conclusory allegations that Defendant City of Pittsburgh's policies violated his constitutional rights:

1. "The City's policy and procedure for 'show-up' identifications was constitutionally insufficient to protect Mr. Coughenour's rights"
2. " . . . the City's policy regarding eyewitness identification was insufficient which permitted the false arrest of [Plaintiff]";
3. " . . . the City's policy regarding eyewitness identification was insufficient, which permitted the false imprisonment of [Plaintiff]";
4. " . . . the City's policy regarding eyewitness identification was insufficient, which permitted the malicious prosecution of [Plaintiff]".

(Doc. 35, ¶¶ 21, 39, 50, 56). However, Plaintiff does not identify a *specific* policy promulgated by the City of Pittsburgh that violates the Constitution. For instance, Plaintiff does not allege that the City of Pittsburgh has a policy requiring—or even permitting—police officers to conduct "show-up" identifications under circumstances similar to those alleged in this case. Nor does Plaintiff allege that the City of Pittsburgh has a custom, *i.e.*, a well-settled course of conduct, of routinely conducting "show-up" identifications under these circumstances. Rather, Plaintiff seems to suggest that the City should be liable based solely on the Defendant Officers' conduct *in this case*. However, "a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an

existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)).[1]

As such, Plaintiff's municipal liability claims will be dismissed. As it is unclear whether leave to amend would be futile, dismissal of these claims will be without prejudice. However, given that Plaintiff already once has amended his pleadings, he must be prepared to make a last, best effort to state a viable claim against Defendant City of Pittsburgh in a Second Amended Complaint, as the Court will not afford further opportunity for amendment. See Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (affirming the Court's dismissal of a plaintiff's second amended complaint with prejudice, where the Court found that "[i]t [] would be inequitable to require Defendant, who already once has exhaustively and successfully defended Plaintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments").

## II. ORDER

For the reasons stated above, Defendant City of Pittsburgh's Motion to Dismiss (Doc. 38) is GRANTED, and Plaintiff's claims against the City are DISMISSED without prejudice. Plaintiff shall file a Second Amended Complaint on or before October 17, 2017. Failure to do so will result in his claims against the City being dismissed with prejudice.

---

[1] Plaintiff filed a Notice of Supplemental Authority, attaching the recent opinion of the Court of Appeals for the Third Circuit, Andrews v. Scuilli, 853 F.3d 690 (3d Cir. 2017). However, as Defendant City of Pittsburgh argues, the Andrews decision does not address Monell liability, which is at issue here, but rather, the issue of qualified immunity. In fact, in the Andrews case, the parties had previously stipulated to the dismissal of Stowe Township (See Civil Action No. 13-1657, Doc. 21), and thus the issue of municipal liability was not before the Third Circuit.

5

IT IS SO ORDERED.

October 2, 2017                                              s/Cathy Bissoon
                                                             Cathy Bissoon
                                                             United States District Judge

CC (via ECF email notification):

All Counsel of Record